UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KERRY BOULTON; ANE MARIE LACY; WILLIAM GAMBA; LUCA AMBGELUCCI; AND JEREMY ANDREWS,<br><br>Plaintiffs,<br><br>v.<br><br>US TAX LIEN ASSOCIATION, LLC; SAEN HIGGINS; STEVE CLEMENTS,<br><br>Defendants. | No. 2:15-CV-02384-MCE-AC<br><br>**MEMORANDUM AND ORDER** |

Through this action, Plaintiffs Kerry Boulton, Ane Marie Lacy, William Gamba, Luca Angelucci, and Jeremy Andrews ("Plaintiffs") allege claims for intentional misrepresentation, negligent misrepresentation, and unfair competition against Defendants US Tax Lien Association, LLC ("USTLA"), Saen Higgins ("Higgins") and Steve Clements ("Clements") (collectively "Defendants") arising from an alleged misrepresentation of American Transfer Services, Inc. ("ATSI") as a reliable third party provider.  Pending before the Court are the Defendants' Motions to Dismiss the First Amended Complaint ("FAC").  ECF Nos. 9, 10.  For the reasons that follow, Defendants' Motion to Dismiss (ECF No. 9) is GRANTED in part and DENIED in part.  Defendants'

Motion to Dismiss (ECF No. 10) is DENIED in its entirety.[1]

## BACKGROUND

USTLA promoted a Tax Lien Certificate Training Program ("Tax Certificate Program") to train its clients to invest in U.S. tax certificates. The Tax Certificate Program included tax lien training seminars, webinars, workshops, face-to-face advanced training, personal coaching sessions, home-study materials, tax lien website access, and e-books. USTLA collaborated with ATSI to assist its foreign students in meeting the additional foreign requirements such as registering an employment identification number, creating a fictitious business, opening a U.S. bank account, and establishing a U.S. mailing address. USTLA paid the travel costs and other expenses for ATSI personnel to accompany USTLA representatives to its international conferences and seminars and did not endorse any other third party service provider. Defendants represented to Plaintiffs that ATSI would assist them in meeting these requirements so they could begin purchasing U.S. tax certificates. Relying on Defendants' representations, Plaintiffs transacted with ATSI.

**A. William Gamba**

On or around September 2012, Plaintiff Gamba attended a USTLA conference in Italy. NAC invited Defendant Clements to present USTLA's Tax Certificate Program. Persuaded by Clements' presentation, Gamba joined the Tax Certificate Program. On or about October 19, 2012, Clements emailed Gamba instructing him to watch a special webinar ("Special Webinar") before he could attend future USTLA workshops. Later that day, USTLA sent another email with a link to the Special Webinar and instructed each foreign student to transact with ATSI. The Special Webinar started out with USTLA executive Defendant Higgins' introducing Sanchez, a representative of ATSI, who

---

[1] Because oral argument would not have been of material assistance, the Court ordered this matter submitted on the briefs. See E.D. Cal. Local R. 230(g).

explained the registration process with ATSI.  Higgins then asked Sanchez to provide ATSI's contact information and instructed students that "[ATSI is] where you need to go." Higgins read aloud ATSI's contact information and stated, "this [ATSI's banking service] is so simple."  Further, Higgins urged the students to "follow the steps and you will have the ability to buy tax liens and deeds in the U.S. within ten to fifteen business days."

Gamba registered with ATSI and wired ATSI approximately $40,000 to be placed in his sub-account to purchase several U.S. tax certificates he identified.  According to Gamba, ATSI failed to carry out the banking service facilitation, withheld Gamba's funds, and ceased all communications with him.

**B. Ann Marie Lacy**

On or about August 10, 2012, Plaintiff Lacy attended her first USTLA Tax Certificate Program in Perth, Australia.  On or about January 24, 2013, Clements sent Lacy an email informing her that "ATSI has successfully helped over 75 non US [sic] get up [with banking services] without coming to the USA."  ECF No. 4 at 7.  Clements then instructed Lacy to quickly contact ATSI.  Relying on USTLA's instructions, Lacy registered with ATSI.  Lacy identified U.S. tax certificates she wished to purchase and wired approximately $25,000 to ATSI to be placed in her sub-account.  ATSI, however, withheld her funds and stopped communicating with her.

**C. Luca Angelucci**

On or about January 12-13, 2013, Plaintiff Angelucci attended a USTLA Tax Lien Workshop in Rome, Italy where Clements presented USTLA's Tax Certificate Program. During the presentation, Clements introduced Sanchez onstage and represented ATSI as the solution for USTLA's students to satisfy the foreign investor requirements. Clements told USTLA's students that they would not have to travel to the U.S. thanks to USTLA's partner ATSI.  At the conclusion of the onstage presentation, USTLA arranged its students to meet with ATSI staff individually.  Angelucci registered with ATSI and wired approximately $35,000 to be placed in his sub-account.  Angelucci specifically asked ATSI and Sanchez to deposit his funds with the county clerk where the U.S. tax

1  certificates he wished to purchases were located.  ATSI failed to carry out the banking
2  services, withheld Angelucci's funds and ceased all communications with him.

3      **D.  Jeremy Andrews**

4      On or about February 20, 2013, Plaintiff Andrews attended USTLA's Tax Lien
5  Crash Program and USTLA's one-day Tax Lien Crash course in San Francisco,
6  California.  A USTLA representative addressed ATSI's ability to facilitate the banking
7  services necessary for its students to invest in U.S. tax certificates.  He then instructed
8  each attendee to contact ATSI immediately.  On or about March 7, 2013, Andrews
9  registered with ATSI and wired approximately $40,000 to be placed in his sub-account.
10 Andrews instructed ATSI to deposit his funds with a county clerk in Florida where U.S.
11 tax certificates he wished to purchase was located.  Andrews claims that ATSI failed to
12 perform the banking transaction and withheld Andrews' funds while ceasing all
13 communication with him.

14     **E.  Kerry Boulton**

15     Clements introduced Plaintiff Boulton to USTLA during his presentation at a
16 business school in Australia.  On or about August 22, 2013, USTLA sent Boulton a link
17 to the Special Webinar.  The email also instructed Boulton to begin the process with
18 ATSI so she could meet the foreign requirements to begin investing in U.S. tax
19 certificates.  Boulton registered with ATSI and located a U.S. tax certificate she wished
20 to purchase.  She then wired $156,000 to ATSI to deposit with the Miami-Dade County
21 Clerk.  ATSI, however, failed to carry out the banking services and withheld Boulton's
22 funds while ceasing all communications with her.
23     On or about October 2013, before Boulton discovered that ATSI withheld her
24 money, she attended a USTLA training seminar in Sydney, Australia hosted by
25 Clements.  Although ATSI representatives were present at the Sydney training, USTLA
26 did not introduce ATSI onstage.  Boulton subsequently learned that USTLA had fired
27 ATSI and Sanchez sometime between USTLA's training, roughly one week earlier, and
28 Sydney training due to the voluminous amount of complaints USTLA had received from

foreign students.

## STANDARD

On a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)[2], all allegations of material fact must be accepted as true and construed in the light most favorable to the nonmoving party. Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996). Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). A complaint attacked by a Rule 12(b)(6) motion to dismiss does not require detailed factual allegations. However, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. (internal citations and quotations omitted). A court is not required to accept as true a "legal conclusion couched as a factual allegation." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009) (quoting Twombly, 550 U.S. at 555). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citing 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1216 (3d ed. 2004) (stating that the pleading must contain something more than "a statement of facts that merely creates a suspicion [of] a legally cognizable right of action.")).

Furthermore, "Rule 8(a)(2) . . . requires a showing, rather than a blanket assertion, of entitlement to relief." Twombly, 550 U.S. at 556 n.3 (internal citations and quotations omitted). Thus, "[w]ithout some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirements of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." Id. (citing 5 Charles

---

[2] All further references to "Rule" or "Rules" shall be to the Federal Rules of Civil Procedure unless otherwise indicated.

Alan Wright & Arthur R. Miller, supra, at § 1202).  A pleading must contain "only enough facts to state a claim to relief that is plausible on its face."  Id. at 570.  If the "plaintiffs . . . have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed."  Id.  However, "[a] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'"  Id. at 556 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

A court granting a motion to dismiss a complaint must then decide whether to grant leave to amend.  Leave to amend should be "freely given" where there is no "undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment . . . ."  Foman v. Davis, 371 U.S. 178, 182 (1962); Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003) (listing the Foman factors as those to be considered when deciding whether to grant leave to amend).  Not all of these factors merit equal weight.  Rather, "the consideration of prejudice to the opposing party . . . carries the greatest weight."  Id. (citing DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 185 (9th Cir. 1987)).  Dismissal without leave to amend is proper only if it is clear that "the complaint could not be saved by any amendment."  Intri-Plex Techs. v. Crest Group, Inc., 499 F.3d 1048, 1056 (9th Cir. 2007) (citing In re Daou Sys., Inc., 411 F.3d 1006, 1013 (9th Cir. 2005); Ascon Props., Inc. v. Mobil Oil Co., 866 F.2d 1149, 1160 (9th Cir. 1989) ("Leave need not be granted where the amendment of the complaint . . . constitutes an exercise in futility . . . .")).

## ANALYSIS

Defendants advance several arguments in the pending Motions.  This Order addresses only those that the Court finds dispositive.

///

### A. Plaintiffs' First Claim for Relief for Intentional Misrepresentation

Plaintiffs' First Claim for Relief for intentional misrepresentation is based on Defendants' alleged representation of ATSI as a reliable third party provider. Plaintiffs allege that they relied on Defendants' representation to transact with ATSI and incurred damages as a result. Defendants move to dismiss Plaintiffs' First Claim for Relief on the basis that Plaintiffs have failed to adequately plead intentional misrepresentation. Defendants contend that Plaintiffs have failed to allege any elements or facts sufficient to support the claim. Moreover, Defendants argue that Plaintiffs "lumped multiple defendants together". Despite Defendants' contentions, the allegations made against Clements and Higgins are in fact separate, distinguishable and sufficient.

A claim for relief for fraud must allege: (1) a material misrepresentation, (2) knowledge of falsity, (3) intent to defraud or induce reliance, (4) justifiable reliance, and (5) resulting damage. First Advantage Background Serv. Corp. v. Private Eyes, Inc., 569 F.Supp. 2d 929, 939 (N.D. Cal. Mar. 5, 2008); Lazar v. Superior Court, 12 Cal. 4th 631, 638 (1996).

Plaintiffs' fraud-based claims are subject to review under Rule 9(b)'s heightened pleading standard. See Fed. R. Civ. P 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."); Kearns v. Ford Motor Co., 567 F.3d 1120, 1124-25 (9th Cir. 2009). Plaintiffs must articulate the "who, what, when, where and how" of the fraud alleged. Kearns, 567 F.3d at 1126. Additionally, "for corporate defendants, Plaintiffs must allege the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written." Flowers v. Wells Fargo Bank, N.A., No. C 11-1315 PJH, 2011 WL 2748650, at *6 (N.D. Cal. July 13, 2011). Plaintiffs have met this heightened standard of review.

#### 1. Gamba

Gamba has identified with particularity the roles of Clements and Higgins in the misrepresentations he alleges. Gamba claims that Clements directed him to watch the

Special Webinar which featured Higgins' introduction of Sanchez from ATSI. Gamba also alleges that Higgins read aloud ATSI's contact information and stated, "[g]et ahold of Ruben Sanchez and his team at American Transfer Services, Inc." and "follow the steps and you will have the ability to buy tax liens and deeds in the U.S. within ten to fifteen business days." ECF No. 4, 6. Here, the allegations provide sufficient notice to USTLA. See Flowers, 2011 WL 2748650, at *6 (fraud allegations must be specific to give defendants notice of the particular misconduct …so that they can defend against the claim). Moreover, Gamba sufficiently alleges that misrepresentations involved material facts because the foreign requirements were prerequisite to investing in U.S. tax certificates.

### 2. Lacy

Lacy alleges that on or about August 10, 2012, Clements sent Lacy an email informing her that "ATSI has successfully helped over 75 non US [sic] get set up [with banking services] without coming to the USA." ECF No. 4, 7. Clements then instructed Lacy to quickly contact ATSI. Lacy has consequently met the initial burden of establishing the first element of fraud.

### 3. Angelucci

Angelucci alleges that on or about January 12-13, 2013, Clements introduced Sanchez on stage at a USTLA Tax Lien Workshop in Rome, Italy and represented ATSI "as the solution for USTLA's students to meet the Foreign Requirements." ECF No. 4, 8. Here, Angelucci has sufficiently pleaded amaterial misrepresentation by Defendants on the basis of that representation.

### 4. Andrews

On or about February 20, 2013, Andrews attended USTLA's Tax Lien Crash Program and USTLA's one-day Tax Lien Crash Course in San Francisco, California. A USTLA representative described ATSI's ability to facilitate the banking services for its students to invest in U.S. tax certificates. Then, the representative instructed each attendee to contact ATSI immediately. Here, although Andrews has not identified the

specific person within USTLA responsible for the allegations, he has sufficiently identified the parties with enough clarity to satisfy Rule 9(b).  He has identified the time, and place the allegations were made.  Moreover, in cases of corporate fraud, the false or misleading information conveyed in its webinar and onstage presentation is reasonably presumed to be the collective actions of the officers.  See Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1440 (9th Cir. 1987) (where the misrepresentations in corporate annual reports were considered the collective actions of the officers).  Accordingly, Andrews fulfilled the particularity requirements under Rule 9(b) in pleading the first element of fraud.

### 5. Boulton

Similarly, Boulton's claim for intentional misrepresentation is based on the misrepresentation by USTLA on or about August 22, 2013 that Boulton should contact ATSI immediately so she could meet the Foreign Requirements necessary to invest in U.S. tax certificates.  As with the other Plaintiffs, Boulton has also met the Rule 9(b) pleading requirement.

Accordingly, the Court concludes that all five individual Plaintiffs have sufficiently pleaded Defendants' material misrepresentation.  As to knowledge of falsity, "[m]alice, intent, knowledge, and other condition of mind of a person may be averred generally." Consistent with Rule 9(b), Plaintiffs have alleged the state of mind or scienter of the defendants generally.  See Odom v. Microsoft Corp., 486 F.3d 541, 553 (9th Cir. 2007) (en banc) ("We conclude that plaintiffs may aver scienter generally, just as the rule sates-that is, simply by saying that scienter existed").

Furthermore, Plaintiffs have sufficiently alleged that Defendants intentionally and/or recklessly misrepresented that ATSI would provide the services to fulfill the foreign requirements.  Plaintiffs allege that USTLA failed to conduct the necessary due diligence to find that Sanchez had numerous judgments and liens filed against him, all of which were public information.  Moreover, Plaintiffs' factual allegations support that their reliance was justified.  USTLA, Higgins and Clements represented themselves as tax

experts and promoted ATSI to its students through the Special Webinars, in-person presentations and emails.  Lastly, Plaintiffs have successfully alleged the resulting damages of approximately $358,000 and additional amounts.  Accordingly, Defendants' Motion to Dismiss is DENIED as to intentional misrepresentation claims.

### B. Plaintiffs' Second Claim for Relief for Negligent Misrepresentation

Defendants move to dismiss Plaintiffs' Second Claim for Relief on the basis that Plaintiffs have failed to adequately plead actionable negligent misrepresentation.  To state a claim for relief for negligent misrepresentation, Plaintiffs must allege: (1) a misrepresentation of a past or existing material fact, (2) made without reasonable grounds for believing it to be true, (3) with intent to induce another's reliance on the fact misrepresented, (4) in the face of ignorance of the truth and justifiable reliance thereon by the party to whom the misrepresentation was directed, and (5) resulting damage.  Fox v. Pollack, 181 Cal. App. 3d 954, 962 (1986).  Plaintiffs have sufficiently alleged a claim for negligent misrepresentation because elements of negligent misrepresentation are identical to those of fraud except that the defendant need not have knowledge the representation is false.  See Platt Elec. Supply, Inc. v. EOFF Elec., Inc., 522 F.3d 1049, 1055 (9th Cir. 2008).  Accordingly, Defendants' Motion to Dismiss for failure to state a claim is DENIED as to negligent misrepresentation claims.

### C. Plaintiffs' Third Claim for Relief for Violation of Section 17200 California Bus. & Prof. Code

Defendants have moved to dismiss Plaintiffs' UCL claims on a number of bases.  The Court however, premises its ruling as to the viability of those claims on extraterritoriality arguments not raised by Defendants.  California's Supreme Court has made clear that there is a strong presumption against the extraterritorial application of California law.  Sullivan v. Oracle Corp., 51 Cal.4th 1191, 1207 (2011).  In Sullivan, the California Supreme Court stated explicitly that "[n]either the language of the UCL nor its legislative history provides any basis for concluding the Legislature intended the UCL to operate extraterritorially," and, therefore, the presumption against extraterritoriality

"applies to the UCL in full force." Id.  Accordingly, the UCL does not apply to actions occurring outside of California that injure non-residents.  Ice Cream Distrib. of Evansville, LLC. v. Dreyer's Grand Ice Cream, Inc., C-09-5815 CW, 2010 WL 3619884 (N.D. Cal. Sept. 10, 2010), aff'd, 487 Fed.Appx.362 (9th Cir. 2012) (internal citation and quotation marks omitted).

Here, the critical question presented by Plaintiffs' complaint is whether application of UCL in the circumstances alleged actually entails an extraterritorial application of the statute.  The California Supreme Court in Sullivan has permitted the application of California law where the plaintiffs' claims were based on alleged misrepresentations that were disseminated from California.  See Sullivan, 51 Cal.4th at 1208; see also In Re Robacco II Cases, 46 Cal. 4th 298, 312 (the UCL's focus is "on the defendant's conduct, rather than the plaintiff's damage, in service of the statute's larger purpose of protecting the general public against unscrupulous business practices").

Plaintiffs have failed to allege a sufficient nexus between California and the misrepresentations which form the basis of their claims.  Specifically, there is no allegation that the misrepresentations at issue originated from California.  Accordingly, the Court concludes that application for the UCL in these circumstances constitutes extraterritorial application and therefore GRANTS Defendants' Motion to Dismiss on this ground.  Plaintiffs' Third Claims for Relief is DISMISSED with leave to amend.

**D.  Defendants' Motion to Sever and Motion to Dismiss Under 12(b)(1)**

Defendants seek to sever the Plaintiffs' claims into individual actions against the corresponding Defendants.  In conjunction, Defendants seek to dismiss each of the Plaintiffs' severed claims for lack of subject matter jurisdiction because each claim will fail to meet the $75,000 amount in controversy requirement under 28 U.S.C.A. § 1332 upon severing.  The Court DENIES Defendants' Motion to Sever and Motion to Dismiss.

A district court may "sever any claims against a party." Fed.R.Civ.P. 21.  A court may sever particular parties or claims where the joinder is improper under Federal Rule of Civil Procedure 20 and "no substantial right will be prejudiced by the severance."

1  Coughlin v. Rogers, 130 F.3d 1348, 1350 (9th Cir. 1997).  Moreover, even where joinder
2  is proper under Rule 20, a court may still order  severance to prevent delay or prejudice.
3  Coleman v. Quaker Oats Co., 232 F.3d 1271, 1296 (9th Cir. 2000).  The decision
4  whether to grant  severance lies within the district court's discretion.  See Coughlin, 130
5  F.3d at 1351.  A court may consider the same factors relevant to bifurcation under Rule
6  42(b) in determining whether to permit severance under Rule 21.  See Anticancer, Inc. v.
7  Pfizer Inc., 11-CV-107 JLS RBB, 2012 WL 1019796, at *2 (S.D. Cal. Mar. 26, 2012).
8  Courts balance such factors as the convenience and economy of one trial; the
9  complexity of legal theories and factual proof; and the potential of prejudice if severance
10 is granted.  See, e.g., CJ Inv. Servs., Inc. v. Williams, 5:08-CV-5550 EJD, 2012 WL
11 547176, at *2 (N.D. Cal. Feb. 17, 2012); Wynes v. Kaiser Permanente Hosp., 2:10-CV-
12 00702-MCE, 2011 WL 4954196, at *4 (E.D. Cal. Oct. 17, 2011).

13       The first prong of Rule 20 "refers to similarity in the factual background of a
14 claim."  Coughlin, 130 F.3d at 1350.  The second requirement is that there be a single
15 question of law or fact common to all the parties joined.  Desert Empire Bank v. Ins. Co.
16 of N. Am., 623 F.2d 1371, 1375 (9th Cir. 1980).  "The common question need not
17 predominate; [that is] a requirement for class actions, not for permissive joinder."  Lee v.
18 Cook Cnty., Ill., 635 F.3d 969, 971 (7th Cir. 2011).  However, "the mere fact that all…
19 claims arise under the same general law does not necessarily establish a common
20 question of law or fact."  Coughlin, 130 F.3d at 1351.

21       Here, the same transaction or occurrence requirement of Rule 20 is met because
22 Plaintiffs' claims "arise out of a systematic pattern of events" and are logically related.
23 Bautista v. Los Angeles Cnty., 216 F.3d 837, 842-43 (9th Cir. 2000).  Plaintiffs' claims for
24 relief are based on Defendants' alleged misrepresentation of ATSI as a reliable third
25 provider.  Specifically, Plaintiffs allege Defendants' pattern of representation manifested
26 in each individual Plaintiff's allegations.

27       The commonality requirement is satisfied as well.  Plaintiffs' claims involve the
28 common questions of whether Defendants intentionally and negligently misrepresented

Plaintiffs and whether Defendants engaged in unfair business practice by falsely representing ATSI. Additionally, because courts construe Rule 20 requirements liberally to promote trial convenience, the Court finds Plaintiffs' joinder under Rule 20 proper. Accordingly, both Defendants' Motion to Sever and Motion to Dismiss are DENIED.

## CONCLUSION

Defendants' Motion to Dismiss (ECF No. 9) is GRANTED in part and DENIED in part. Defendants' Motion to Dismiss (ECF No. 10) is DENIED in its entirety.

IT IS SO ORDERED.

Dated: April 13, 2016

MORRISON C. ENGLAND, JR, CHIEF JUDGE
UNITED STATES DISTRICT COURT